**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x    **FOR PUBLICATION**

In re:                                                     :
                                                          :
      DEWEY & LEBOEUF LLP, *et al.*,            :    Chapter 11
                                                          :    Case No. 12-12321 (MG)
                                                          :
                                        Debtor.            :
------------------------------------------------------------x

ALAN M. JACOBS, as Liquidating Trustee of        :
the Dewey & LeBoeuf Liquidation Trust,           :
                                                  :
                                  Plaintiff,      :
                                                  :    Adv. Proc. No. 14-01015 (MG)
                                                  :
     v.                                  :
                                                  :
JOHN J. ALTORELLI,                                :
                                                  :
                                  Defendant.      :
------------------------------------------------------------x

ALAN M. JACOBS, as Liquidating Trustee of        :
the Dewey & LeBoeuf Liquidation Trust,           :
                                                  :
                                  Plaintiff,      :
                                                  :    Adv. Proc. No. 14-01797 (MG)
                                                  :
     v.                                  :
                                                  :
DAVID R. GREENE,                                  :
                                                  :
                                  Defendant.      :
------------------------------------------------------------x

ALAN M. JACOBS, as Liquidating Trustee of        :
the Dewey & LeBoeuf Liquidation Trust,           :
                                                  :
                                                  :
                                  Plaintiff,      :
                                                  :    Adv. Proc. No. 13-01772 (MG)
                                                  :
     v.                                  :
                                                  :
L. LONDELL McMILLAN,                              :
                                                  :
                                  Defendant.      :
------------------------------------------------------------x

1

```
------------------------------------------------------------x
ALAN M. JACOBS, as Liquidating Trustee of      :
the Dewey & LeBoeuf Liquidation Trust,         :
                                               :
                              Plaintiff,       :
                                               :    Adv. Proc. No. 14-01818 (MG)
                    v.                         :
                                               :
STEVEN P. OTILLAR,                             :
                                               :
                              Defendant.       :
------------------------------------------------------------x
ALAN M. JACOBS, as Liquidating Trustee of      :
the Dewey & LeBoeuf Liquidation Trust,         :
                                               :
                              Plaintiff,       :
                                               :    Adv. Proc. No. 14-01795 (MG)
                    v.                         :
                                               :
MICHAEL STEELE,                                :
                                               :
                              Defendant.       :
------------------------------------------------------------x
ALAN M. JACOBS, as Liquidating Trustee of      :
the Dewey & LeBoeuf Liquidation Trust,         :
                                               :
                              Plaintiff,       :
                                               :    Adv. Proc. No. 14-01794 (MG)
                    v.                         :
                                               :
RONALD W. ZDROJESKI,                           :
                                               :
                              Defendant.       :
------------------------------------------------------------x
ALAN M. JACOBS, as Liquidating Trustee of      :
the Dewey & LeBoeuf Liquidation Trust,         :
                                               :
                              Plaintiff,       :
                                               :    Adv. Proc. No. 14-01817 (MG)
                    v.                         :
                                               :
TERRENCE MAHONEY,                              :
                                               :
                              Defendant.       :
------------------------------------------------------------x
```

2

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
## CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

*A P P E A R A N C E S:*

DIAMOND McCARTHY LLP
*Attorneys for Alan M. Jacobs, Liquidating Trustee*
*for the Dewey & LeBoeuf Liquidation Trust*
909 Fannin Street, 15th Floor
Houston, Texas 77010
By:    Christopher R. Murray, Esq.

SHNADER HARRISON SEGAL& LEWIS LLP
*Attorneys for Defendants John J. Altorelli*
650 California Street, 19th Floor
San Francisco, California 94108-2736
By:    Paul Jasper, Esq. (Admitted *pro hac vice*)

SHNADER HARRISON SEGAL& LEWIS LLP
*Attorneys for Defendants John J. Altorelli*
140 Broadway, Suite 3100
New York, New York 10005
By:    Michael Tamasco, Esq.

DLA PIPER LLP (US)
*Attorneys for Defendants John J. Altorelli*
1251 Avenue of the Americas
New York, New York 10020-1104
By:    Thomas Califano, Esq.
         Joshua A. Kane, Esq.

McKENNA LONG & ALDRIDGE LLP
*Attorneys for Defendant Michael Steele*
230 Park Avenue, Suite 1700
New York, New York 10169
By:    Christopher F. Graham, Esq.

MEISTER SEELIG & FEIN LLP
*Attorneys for Defendants Ronald Zdrojeski*
*and David R. Greene*
125 Park Avenue, 7th Floor
New York, New York 10017
By:    Christopher J. Major, Esq.

THE McMILLAN FIRM
29 W. 46th Street, 3rd Fl.
New York, New York 10036
By:     L. Londell McMillan, Esq. (*pro se*)

McGRAIL & BENSINGER LLP
*Attorneys for Steven P. Otillar*
676A Ninth Avenue, #211
New York, New York 10036
By:     David C. McGrail, Esq.

NELSON KINDER & MOSSEAU P.C.
*Attorneys for Terrence Mahoney*
2 Oliver Street
Boston, Massachusetts 02109
By:     Richard Levine, Esq.

RICH MICHAELSON MAGALIFF
MOSER, LLP
*Attorneys for Terrence Mahoney*
340 Madison Avenue, 19th Floor
New York, New York 10173
By:     Howard P. Magaliff, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are cross-motions for partial summary judgment in seven partially

consolidated adversary proceedings filed by Alan M. Jacobs, as the Liquidating Trustee for the

Dewey & LeBoeuf Liquidation Trust (the "Trustee"), seeking to claw back compensation paid to

former partners (the "Defendants") of Dewey & LeBoeuf LLP ("Dewey," or the "Debtor"), a

limited liability partnership ("LLP") registered under the New York Partnership Law ("NYPL"),

while the firm was allegedly insolvent before it filed for bankruptcy.[1]  The cross-motions raise

novel and complex issues regarding the application of fraudulent conveyance provisions section

548 of the Bankruptcy Code and section 277 of the New York Debtor and Creditor Law

---

[1]     Originally, these cross-motions were filed in nine partially consolidated adversary proceedings.  Two of the
proceedings settled prior to the Court's issuing of this opinion.

("NYDCL") to limited liability partners.  The key question, ultimately, is whether the

Defendants may assert affirmative defenses of "reasonably equivalent value" under the

Bankruptcy Code or "fair consideration" under the NYDCL based on the value of the services

the Defendants rendered on behalf of the firm.

The Court concludes below that the Defendants are entitled to summary judgment

dismissing the Trustee's claims under section 548(b) of the Bankruptcy Code—while it may

seem counterintuitive, Dewey must be treated as a "corporation" rather than as a "partnership"

for purposes of the Bankruptcy Code so the Complaint fails to state a claim under section 548(b).

With regard to the Trustee's claims under section 548(a)(1)(B) of the Bankruptcy Code,

which by its terms provides a defendant with a "reasonably equivalent value" defense, the Court

grants summary judgment to the Trustee, declaring that *services* rendered by a partner pursuant

to the partnership agreement do not constitute "value" that may be considered under a

"reasonably equivalent value" defense.  The Court also grants summary judgment to the Trustee

on its section 548(a)(1)(B) claims determining that to the extent the challenged transfers to

Defendants were made as returns of former partners' capital contributions, the transfers were not

made on account of antecedent debts and therefore cannot be construed as "reasonably

equivalent value" as a matter of law.

As to the Trustee's NYDCL claims, the Court concludes below that the Trustee is entitled

to summary judgment declaring that section 277 of the NYDCL applies to a New York LLP such

as Dewey and subdivision (a) of that section applies to limited liability partners of Dewey.  As a

result, the Court further concludes that the Defendants are precluded from asserting the "fair

consideration" defense they raised in their motion to the Trustee's claw back claims to recover

compensation paid under the partnership agreement while Dewey was insolvent.  The only

relevant inquiry on the NYDCL claims, then, is the date of Dewey's insolvency, an issue not yet
resolved in these cases.

Therefore, as explained below, the Court **GRANTS** in part and **DENIES** in part each of
the motions.

## I.    BACKGROUND

### A.    Dewey's Bankruptcy, the Adversary Proceedings, and the Cross-Motions

Dewey was a prestigious New York City-based law firm registered as a LLP under the
NYPL.  At its peak, more than 1,300 lawyers worked at the firm in numerous domestic and
foreign offices.  Hundreds of these lawyers—partners and associates alike—left the firm shortly
before the firm collapsed.  On May 29, 2012, Dewey filed a voluntary petition for relief under
chapter 11 of the Bankruptcy Code.  (Ch. 11 Case No. 12-12321, ECF Doc. # 1.)

Dewey's second amended plan of liquidation was confirmed on February 27, 2013 (the
"Liquidation Plan" or "Plan," Ch. 11 Case No. 12-12321, ECF Doc. # 1144).  Jacobs was
appointed as the Liquidating Trustee under the confirmed Plan.  (*Id*.)  The Liquidation Plan
included the Partner Contribution Settlement Agreements and Mutual Releases (the "PCP"), a
settlement agreement between Dewey and more than 400 of roughly 670 former Dewey partners
that was approved by the Court on October 9, 2012 following a contested hearing.  *See In re
Dewey & LeBoeuf LLP*, 478 B.R. 627, 632, 634 (Bankr. S.D.N.Y. 2012).  The PCP required
participating partners to pay the Trustee a portion of the compensation the partners were
previously paid by the firm.  *Id*. at 632–34.  Confirmation of Dewey's Liquidation Plan was a
condition precedent to the effectiveness of the PCP.  *Id*. at 642.  Not all Dewey partners joined
the PCP.  *Id*. at 634.  The Defendants in these adversary proceedings are among those that did
not join the PCP, and the Trustee later filed these adversary proceedings against them in an effort

6

to claw back payments Dewey made to these partners while Dewey was allegedly insolvent before filing for bankruptcy.

The Defendants have moved for partial summary judgment ("Defendants' Motion" or "Defs' Motion," ECF Doc. # 16),[2] supported by a supplemental statement of undisputed facts (ECF Doc. # 19). The Trustee filed an opposition and cross-motion ("Trustee's Motion," ECF Doc. # 21), supported by the Trustee's response to the Defendant's supplemental statement of undisputed facts (ECF Doc. # 22). The Defendants filed a reply on their motion and an opposition to the Trustee's Motion ("Defendants' Reply" or "Defs' Reply," ECF Doc. # 28). The Trustee then filed a reply on his motion ("Trustee's Reply," ECF Doc. # 30). The parties also signed a stipulation of undisputed material facts for purposes of these motions ("Stipulated Facts," ECF Doc. # 18). The Court heard argument on the cross-motions on October 2, 2014.

The adversary proceedings subject to these cross-motions were partially consolidated for pretrial purposes. (*See* March 31, 2014 Order, ECF Doc. # 11.) At a pre-motion hearing on August 5, 2014, the Court agreed that the parties could file cross-motions for partial summary judgment limited to legal issues that are generally applicable in all of the adversary proceedings and based on facts common to most or all of the Defendants. (Aug. 5, 2014 Hearing Tr. 14:20–15:5, 21:15–21, 24:22–25:19, ECF Doc. # 14.) Any issues based on individualized facts are beyond the scope of these motions. (*See id.*) The motions are based on legal issues arising out of distributions or payments made to the Defendants pursuant to the general terms of Dewey's partnership agreement. (*Id*. at 24:22–25:19.) Any special compensation or one-off side-deals that Dewey made with individual partners (and it had many such deals) are not before the Court

---

[2]     For purposes of these cross-motions, the parties filed their papers only on the *Jacobs v. Marcoux* (Adv. Proc. No. 13-01687) docket. The Trustee and Defendant Marcoux have since stipulated to settle and dismiss the adversary complaint against him. For citations to the record, however, the Court continues to cite to documents, including the complaint, from the *Marcoux* docket, unless otherwise indicated.

at this time.  (*Id*.)  The motions were so limited to narrow the issues in this group of adversary

proceedings to aid the parties in negotiating settlements or focusing the litigation should the

cases go forward.  (*Id*. at 14:20–15:5.)  The Court urged the parties to stipulate to undisputed

facts to restrict the cross-motions to those issues the parties determined to be collective.  (*See id*.

at 32:19–33:1.)

> 1.     *Stipulated Facts*

Dewey was a law firm created on October 1, 2007, through a merger between two

prominent firms:  Dewey Ballantine LLP and LeBoeuf Lamb Greene & McRae LLP.  (Stipulated

Facts ¶ 1.)  Dewey was, from October 1, 2007 until at least May 28, 2012, a registered LLP

under the NYPL.  (*Id*. ¶ 2.)  Dewey was organized under the Dewey & LeBoeuf LLP Partnership

Agreement effective October 1, 2007 and amended in 2010 and 2012 (the "DLPA").  (*Id*. ¶¶ 3–9

(attaching the three versions of the agreement).)[3]

As of October 1, 2007, Dewey had over 200 partners.  (*Id*. ¶ 10.)  As of April 1, 2012,

Dewey had at least 200 partners, but at its height, Dewey had more than 1,300 attorneys working

in twenty-six offices throughout the world.  (*Id*. ¶ 11.)  Steven H. Davis was Dewey's Chairman

from October 1, 2007 until April 3, 2012.  (*Id*. ¶ 12.)  Steven DiCarmine and Joel Sanders were

Dewey's Executive Director and Chief Financial Officer, respectively, from October 1, 2007

until both were terminated on May 11, 2012.  (*Id*. ¶ 13.)

> 2.     *The Defendants' Motion*

The Defendants' first seek partial summary judgment declaring that Dewey, a New York

LLP, is a "corporation" debtor under the Bankruptcy Code requiring that the Trustee's

Bankruptcy Code section 548(b) claims, which only applies to "partnership debtor[s]," be

dismissed.  (Defs' Motion at 8–12.)  The Defendants rely on the Code's definition of

---

[3]       Citations to the DLPA refer to the 2012 version, unless otherwise indicated.

"corporation," which includes a "partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association."  (*Id*. at 9 (quoting 11 U.S.C. § 101(9)(A)(ii)).)  The Defendants argue, alternatively, that if Dewey is a "partnership debtor" subject to section 548(b), the claims should still be dismissed because Defendants are not "general partners" under that section.  (*Id*. at 11–12.)

The Defendants next assert that they are not "partners," but "person[s] not [] partner[s]" entitled to a "fair consideration" defense as a matter of law for purposes of NYDCL section 277. (*Id*. at 12–20.)  Defendants expressly concede that Dewey is a "partnership" under NYDCL section 277 (Oct. 2, 2014 Hearing Tr. 54:13–18), but they argue that Dewey's limited liability partners are not "partners" who are subject to the strict standard of subdivision 277(a).  (*Id*. at 12–16; *see also* Defs' Reply at 11–18.)  The Defendants move in the alternative for partial summary judgment declaring that even if they are "partner[s]" for purposes of section 277(a), they are entitled to NYDCL section 278's "fair consideration" defense afforded to "purchasers," in spite of NYDCL section 277(a)'s omission of a "fair consideration" defense.  (Defs' Motion at 16–17; Defs' Reply at 18–19.)

The Defendants also argue that they are entitled to the "reasonably equivalent value" and "fair consideration" defenses under the Bankruptcy Code and NYDCL, respectively, in two ways.  (*Id*. at 20–25.)  *First*, the Defendants seek partial summary judgment holding that they are entitled to a credit for the fair value of the services they rendered while partners of Dewey against their potential personal liability for the alleged fraudulent transfers.  (*Id*. at 20–22.) According to the Defendants, their services to Dewey, in the form of billable hours worked, business generated, fees collected, marketing, and client and practice development, were "property" conveyed to Dewey that, in turn, provided "value" for creditors that should

9

necessarily be considered.  (*Id.*)  *Second*, the Defendants argue that transfers that returned the former partners' capital contributions after their respective departure dates from the firm were made on account of antecedent debts under Dewey's partnership agreement (the DLPA) and, therefore, are not avoidable.  (*Id.* at 22–25.)

### 3.      The Trustee's Motion

The Trustee cross-moves for partial summary judgment declaring that Dewey is a "partnership debtor" subject to section 548(b) of the Code.  (Trustee's Motion at 17–20.) According to the Trustee, the NYPL provides an exception to the limited liability shield afforded to LLP partners for personal liability for wrongful conduct committed by a partner or someone that partner supervises.  (*Id.* at 18–19.)  This exception, the Trustee contends, precludes a New York LLP from being considered a "corporation" under the Code because the partnership's debts are not limited "only [to] the capital subscribed."  (*Id.*)  The Trustee further argues that whether the Defendants are "general partners" under section 548(b) is an issue of fact that requires individualized analyses and is therefore outside the scope of these cross-motions.  (*Id.* at 19–20.)

The Trustee also asserts that limited liability partners such as the Defendants are subject to NYDCL section 277(a)'s strict standard because Dewey, a New York LLP, is a "partnership" and the Defendants, as Dewey's former partners, are "partners" for purposes of that section.  (*Id.* at 11–14.)  The Trustee contends that the language of the statute is unambiguous and does not contemplate the exclusion of LLP partners from its application.  (*Id.* at 11.)  Other provisions of the NYDCL do distinguish amongst types of partners (i.e. general and limited), but the legislature chose not to do so in section 277.  (*Id.* at 11–12.)

The Trustee also cross-moves for partial summary judgment declaring that the Defendants are not entitled to a "value" defense under the Code or the NYDCL because (1) under the "no compensation rule" employed by New York, the Defendants are not entitled to

compensation outside of their partnership interest for services rendered pursuant to the DLPA (*id*. at 5–9), and (2) the return of former partners' capital contributions are equity distributions, not made on account of antecedent debts (*id*. at 15–17).  The Trustee further seeks partial summary judgment precluding the Defendants from bringing a "fair consideration" defense because as former partners in Dewey, the Defendants are "insiders" and thus any transfer made to them while Dewey was insolvent are presumed to lack the requisite good faith.  (*Id*. at 9–10.)

## II.    DISCUSSION

### A.    Standard on a Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Partial summary judgment may be granted on a discrete issue if the party identifies 'each claim or defense—or the part of each claim or defense—on which summary judgment is sought . . . .'"  *Geron v. Fontana (In re Thelen LLP)*, Adv. Proc. Nos. 11-02648, 11-02674, 11-02690, 13-01444, 2014 WL 2178156, at *2 (Bankr. S.D.N.Y. May 23, 2014) (citing FED. R. CIV. P. 56(a)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law."  *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995); *see also McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47, 58 (Bankr. S.D.N.Y. 2010).  "A fact is 'material' if it might affect the outcome of the suit under the governing substantive law"; an issue is "genuine" "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Fontana*, 2014 WL 2178156, at *2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

11

B.       **Bankruptcy Code Section 548(b)**

The Trustee asserts claims pursuant to section 548(b) of the Bankruptcy Code to avoid

allegedly fraudulent transfers made by Dewey to the Defendants.  (*See, e.g.*, Compl. ¶¶ 65–73.)

Section 548(b) states:

> The trustee of a partnership debtor may avoid any transfer of an
> interest of the debtor in property, or any obligation incurred by the
> debtor, that was made or incurred on or within 2 years before the
> date of the filing of the petition, to a general partner in the debtor,
> if the debtor was insolvent on the date such transfer was made or
> such obligation was incurred, or became insolvent as a result of
> such transfer or obligation.

11 U.S.C. § 548(b).  The threshold issue is whether Dewey, a registered LLP under New York

law, should be considered a "partnership" or a "corporation" for purposes of section 548.[4]  The

Defendants argue that Dewey is a "corporation" under the Code and consequently, the Trustee's

claims under section 548(b), which only applies to "partnership debtor[s]," fail as a matter of

---

[4]       A trustee seeking to avoid a transfer by an insolvent partnership to a general partner does not need to show
that the transferor did not receive reasonably equivalent value.  *Collier* explains:

> At least two differences distinguish avoidable transfers and obligations under
> this subsection [548(b)] from those provided for in section 548(a).  First, section
> 548(b) contains no intent or knowledge of insolvency requirement.  Second,
> section 548(b) does not require the estate representative to prove receipt of less
> than a reasonably equivalent value in exchange for the transfer or obligation.
> The only factor that the trustee must prove, beyond the fact that a transfer was
> indeed made, or that an obligation was in fact incurred, is that the partnership
> was insolvent at the time of or as a result of the transfer.

5 COLLIER ON BANKRUPTCY ¶ 548.06[2] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.
2014).
        But even though a trustee does not need to prove a lack of reasonably equivalent value as part of the claim,
the defendant retains a "value" defense.  *Collier* explains:

> As in many other provisions of the Code, section 548(b) casts its net wide and
> captures many unobjectionable transactions.  While these transactions are
> technically avoidable under section 548(b), it is often the case that the recipient
> may have given value.  In such a case, section 548(c) is available to the
> recipient, and the transaction may not be avoided to the extent the general
> partner gave value.  As a consequence, the recipient of the transfer may keep
> what has been transferred to the extent of the value the recipient gave to the
> partnership.

*Id*. ¶ 548.06[4].

law.[5]  (Defs' Motion at 8–11.)  The Trustee cross-moves for partial summary judgment declaring

that Dewey is a "partnership" and urges the Court to uphold its section 548(b) claims.  (Trustee's

Motion at 18–19.)  If Dewey is a "partnership," then the Court must also determine whether the

Defendants are "general partner[s]" for purposes of section 548(b).  The Trustee argues that this

second inquiry requires individual analyses of fact outside the scope of these cross-motions.  (*Id.*

at 19–20.)

        The Code defines a "corporation" to include a "partnership association organized under a

law that makes only the capital subscribed responsible for the debts of such association."  11

U.S.C. § 101(9)(ii).  But the Code does not define the terms "partnership" or "partnership

debtor."  *See id.* §§ 101 *et seq.*  The legislative history of the Code indicates that Congress

thought it "unclear how [a partnership-specific provision] would be construed to apply with

regard to registered limited liability partnerships which have been authorized by a number of

States . . . ."  140 Cong. Rec. H10752-01 (1994) (discussing 11 U.S.C. § 723, which addresses

the personal liability of general partners for the debts of the partnership).  *Collier*, the leading

bankruptcy treatise, contemplates the treatment of a state law LLP as a "corporation" rather than

a "partnership" under the Code, but explains that the inquiry varies by state.  2 COLLIER ON

BANKRUPTCY ¶ 101.09.

        Courts look to state law to determine whether a LLP-debtor is a "partnership" for

purposes of the Code.  *See, e.g.*, *In re Beltway Law Grp., LLP*, No. 14-00380, 2014 WL

3882424, at *1–3 (Bankr. D.D.C. Aug. 7, 2014) (applying District of Columbia law to determine

whether LLP-debtor was a "partnership" or "corporation" for purposes of section 303(b)(3)

governing who may file an involuntary bankruptcy petition on behalf of a debtor); *see also In re*

---

[5]      The Defendants also point out that Dewey classified itself as a "corporation" in its voluntary bankruptcy
petition.  (*Id.* at 11.)  The required form, however, explicitly states that "LLPs" should check "Corporation," which
makes this election on its own unpersuasive.

*Rambo Imaging, L.L.P.*, No. 07-11190-FRM, 2008 WL 2778846, at \*6–7 (Bankr. W.D. Tex. July 15, 2008) (applying Texas state law to determine same). The Court must examine the potential liability to which the partners of the LLP are exposed under applicable state law to determine whether that state's version of a LLP constitutes a "partnership" or "corporation" under the Code. 2 COLLIER ON BANKRUPTCY ¶ 101.09; *see also In re Beltway Law Grp., LLP*, 2014 WL 3882424, at \*1–3. According to *Collier*,

> [t]he degree of protection from liability will determine whether the entity is a corporation under the definition in section 101. If the protection is more like that given to corporate shareholders, the entity is more likely to be found to meet the Code's definition of "corporation." If the protection is more limited, the entity is likely to be found to be a partnership under section 101.

2 COLLIER ON BANKRUPTCY ¶ 101.09.

Under New York law, the degree of protection from liability for partners of a registered LLP is governed by NYPL section 26. The NYPL provides:

> no partner [of a registered LLP] . . . is liable or accountable, directly or indirectly (including by way of indemnification, contribution or otherwise), for any debts, obligations or liabilities of, or chargeable to, the registered limited liability partnership or each other, whether arising in tort, contract or otherwise, which are incurred, created or assumed by such partnership while such partnership is a registered limited liability partnership, solely by reason of being such a partner or acting (or omitting to act) in such capacity or rendering professional services or otherwise participating (as an employee, consultant, contractor or otherwise) in the conduct of the other business or activities of the registered limited liability partnership . . . .

N.Y. P'SHIP LAW § 26(b) (McKinney 2014). This liability shield has two exceptions:

> each partner . . . shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or her or by any person under his or her direct supervision and control while rendering professional services on behalf of such registered limited liability partnership . . . .

*id.* § 26(c); and

14

> all or specified partners . . . may be liable in their capacity as
> partners for all or specified debts, obligations or liabilities of a
> registered limited liability partnership to the extent at least a
> majority of the partners shall have agreed unless otherwise
> provided in any agreement between the partners . . . .

*id*. § 26(d).

The Trustee argues that the first exception requires New York LLPs to be considered "partnerships" because it reduces the liability protection and precludes a finding that the debts of a New York LLP are limited to "only the capital subscribed." (*See* Trustee's Motion at 18 (quoting 11 U.S.C. § 101(9)).) This argument is unpersuasive. The first exception makes partners "personally," not jointly or severally, liable for misconduct directly attributable to that partner or someone he or she directly supervises—it does not add a partner's assets to the pool of partnership assets to be used to pay off the partnership's debts.

The New York Court of Appeals did not take issue with either of these exceptions when recognizing the Legislature's desire to enact "liability protection for partners in limited liability partnerships that is 'the same as that accorded to shareholders of a professional corporation organized under the [Business Corporation Law] . . . .'" *Ederer v. Gursky*, 9 N.Y.3d 514, 524 (2007) (quoting 1994 Sess. Law News of N.Y. Ch. 576 (S. 7511-A, A. 11317-A) (McKinney 2014)). No New York bankruptcy court has specifically addressed whether a LLP registered under New York law is a "partnership debtor" for purposes of section 548(b). But at least one other bankruptcy court has held that a LLP registered under the laws of a different state with a similar exception to the partners' liability shield was a "corporation" under a different provision of the Bankruptcy Code. *In re Rambo Imaging, L.L.P.*, 2008 WL 2778846, at *6–7 (concluding that LLP-debtor was a "corporation" for purposes of section 303 of the Code, governing who may file an involuntary bankruptcy petition).

Extending an individual LLP partner's liability to liability arising from that partner's wrongful conduct (including based on the conduct of someone the partner supervised) does not make that LLP partner liable for the debts of the partnership generally and does not affect whether a LLP fits within the definition of "corporation" under the Code. The Court concludes that Dewey, a LLP registered under New York law, should be considered a "corporation" for purposes of section 548(b). Therefore, the Court **GRANTS** in part the Defendants' Motion and dismisses the Trustee's section 548(b) claims in Count II of the complaints as a matter of law.[6] The Court, consequently, need not determine whether the Defendants, who were partners in Dewey, are "general partner[s]" under section 548(b).

## C.    NYDCL Section 277

The parties cross-move for partial summary judgment with respect to the Trustee's claims under section 277 of the NYDCL in Count IV of the complaints.[7] Section 277(a) establishes a stricter standard of liability for the avoidance of constructively fraudulent transfers made by an insolvent "partnership" to its "partner[s]," N.Y. DEBT. & CRED. LAW § 277(a) (McKinney 2014), than section 277(b), which provides a "fair consideration" defense if the transfers are made to "person[s] not [] partner[s]," *id.* § 277(b).[8]

---

[6]    The Trustee did not assert a section 548(b) claim against Defendants Greene and Zdrojeski, (*See* Greene Complaint, Adv. Proc. No. 14-01797, ECF Doc. #1; Zdrojeski Complaint, Adv. Proc. No. 14-01794, ECF Doc. # 1.) Therefore, this ruling does not apply to their adversary proceedings.

[7]    For Defendants Greene and Zdrojeski, the NYDCL section 277 claim is Count II. (*See* Greene Complaint, ¶¶ 55–64, Adv. Proc. No. 14-01797, ECF Doc. #1; Zdrojeski Complaint, ¶¶ 55–64, Adv. Proc. No. 14-01794, ECF Doc. # 1.)

[8]    *See also Smith, Keller & Assoc. v. Dorr & Assoc.*, 875 P.2d 1258, 1269 (Wyo. 1994) ("The remedy provided by the UFCA [section 8(a)] reaches a broad range of transactions. Conveyance [as used in section 8] includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance [.]") (discussing Wyoming's UFCA section 8 equivalent, WYO. STAT. ANN. § 34-14-109(a) (1990), which has since been repealed) (internal quotation marks and citation omitted).

Section 277 provides:

> Every conveyance of partnership property and every partnership
> obligation incurred when the partnership is or will be thereby
> rendered insolvent, is fraudulent as to partnership creditors, if the
> conveyance is made or obligation is incurred,
>
> > a. To a ***partner***, whether with or without a promise by him
> > to pay partnership debts, or
> > b. To a ***person not a partner*** without fair consideration to
> > the partnership as distinguished from consideration to
> > the individual partners.

*Id*. (emphasis added).  The Defendants concede that Dewey, a registered LLP under New York law, is a "partnership" for purposes of this section.[9]  The parties dispute, however, whether the Defendants, who were partners of that New York LLP, should be considered "partner[s]" subject to section 277(a).

The Defendants seek partial summary judgment declaring that partners of New York LLPs are "person[s] not [] partner[s]" subject only to section 277(b).  (Defs' Motion at 12–20.)  They rely on a recitation of the history of the NYPL and its evolution into the current understanding of modern partnerships—an understanding that the Defendants assert does not coincide with NYDCL section 277(a).  (*Id*. at 12–14, 16; Defs' Reply at 12–18.)  According to the Defendants, when NYDCL section 277 was enacted in 1925, only general partnerships and limited partnerships existed and the NYPL's references to "partners" without any specification, similar to section 277's language, were only meant to refer to partners of general partnerships, not limited partnerships.  (Defs' Motion at 14; Defs' Reply at 12–15.)  The Defendants also assert that at the time that section 277 was adopted, the NYPL's references to partners in limited

---

[9]    The Defendants impliedly conceded the point in their reply brief and expressly conceded the point at oral argument.  (*See* Defs' Reply at 11–17; Oct. 2, 2014 Hearing Tr. 54:13–18.)  Under the NYPL, a "partnership" is defined as "an association of two or more persons to carry on as co-owners a business for profit and *includes for all purposes of the laws of this state, a registered limited liability partnership*."  N.Y. P'SHIP LAW § 10(1) (emphasis added).

17

partnerships always specified and/or distinguished between "general partners" and "limited

partners." (*See* Defs' Reply at 12–15.) The Defendants therefore submit that the term "partner"

in NYDCL section 277 should be construed to include partners of general partnerships, but to

exclude partners of limited partnerships and LLPs. (*Id*. at 14–18.) The Defendants further argue

that such an interpretation of section 277 accords with the liability shields the NYPL affords

partners in limited partnerships and LLPs. (*Id*.; Defs' Motion at 16.) According to the

Defendants, applying section 277(a)'s stricter standard to claw back transfers made to limited

partners or LLP partners belies the partnership law's express intentions to protect those partners'

personal assets from being used to pay off partnership debts. (Defs' Motion at 16; Defs' Reply

at 14–18.)

The Trustee argues that partners are partners, and the term "partner" in NYDCL section

277(a) includes partners of LLPs. (Trustee's Motion at 11–14.) The Trustee points out that the

Legislature knew how to distinguish between general and limited partners in 1925 because in the

partnership test for insolvency, codified in NYDCL section 271(2), the Legislature chose to refer

to both "general partners" and "limited partners." (*Id*. at 11 (discussing N.Y. DEBT. & CRED.

LAW § 271(2) ("In determining whether a partnership is insolvent there shall be added to the

partnership property the present fair salable value of the separate assets of each ***general partner***

in excess of the amount probably sufficient to meet the claims of his separate creditors, and also

the amount of any unpaid subscription to the partnership of each ***limited partner***, provided the

present fair salable value of the assets of such ***limited partner*** is probably sufficient to pay his

debts, including such unpaid subscription.") (emphasis added)).) The Trustee argues that if the

Legislature wanted to limit section 277(a)'s application to only "general partners," it would have

expressly done so. (*Id*.) The Trustee further asserts that in codifying LLPs in the NYPL, the

18

Legislature amended several provisions that referred only to "partners," by providing carve-out

exceptions for partners of LLPs. (Trustee's Reply at 6–7.) The Trustee submits that there would

be no need for such carve-outs if the term "partners" did not include partners of LLPs. (*Id.*)

Section 277 stems from New York's adoption in 1925 of the Uniform Fraudulent

Conveyance Act ("UFCA"), Walter H. Pollack, Chairman, Ass'n of the Bar of the City of N.Y.

Comm. on the Amendment of the Law, Bulletin No. 6, Memos No. 91-123-A Inclusive, Memo

No. 102 at 199, Bill Jacket, L. 1925 ch. 254 (hereinafter "Bill Jacket Memo"), initially proposed

for adoption by the National Conference of Commissioners on Uniform State Laws in 1918,

UNIF. FRAUDULENT CONVEYANCE ACT (1918), *reprinted in* PETER A. ALCES, LAW OF

FRAUDULENT TRANSACTIONS app. A (Thomson Reuters May 2014), *available at* Westlaw

FRAUDTRAN. Specifically, NYDCL section 277 is based on section 8 of the UFCA, Bill

Jacket Memo at 199, which avoids certain transfers without regard to intent because these

conveyances were deemed to have "wrong[ed] creditors" despite the lack of intent to defraud.

UNIF. FRAUDULENT CONVEYANCE ACT, prefatory note ("The Statute of Elizabeth[, which

embodied fraudulent transfer law before the UFCA was promulgated,] condemns conveyances as

fraudulent only when made with 'intent' to 'hinder, delay or defraud.'"). Adoption of the

UFCA's partnership-specific provision in the NYDCL was believed to be necessary to fill a

"gap" in the NYPL, which apparently failed to discuss fraudulent conveyances generally or

transfers of an insolvent partnership's assets to a partner more specifically. Bill Jacket Memo at

203–04 (citing Judson A. Crane, *The Uniform Partnership Act A Criticism*, 28 HARV. L. REV.

762, 774–75 (June 1915) (explaining that the Uniform Partnership Act did not address the rights

of creditors to avoid transfers in four situations: "(1) The firm being insolvent applies its assets,

or part of them, to pay a debt of the partners not a partnership debt. (2) The firm being insolvent

applies its assets or part of them to the payment of separate debts of one or more partners.  (3)
The firm being insolvent transfers its assets to a partner.  (4) The firm being insolvent divides its
assets among the partners.")).

Defendants are correct that at the time NYDCL section 277 was enacted, LLPs did not
exist; only general and limited partnerships existed and therefore only limited and general
*partners* existed.  (Defs' Reply at 13 (citing N.Y. P'SHIP LAW § 26; 1994 Sess. Law News of
N.Y. Ch. 576 (S. 7511-A, A. 11317-A) (illustrating section 26's original text versus amended
text adding language pertaining to LLPs)).)  The Defendants are also correct that the crux of the
amendments to the NYPL codifying LLPs was the establishment of the limited liability shield for
LLP partners in NYPL section 26(b), the text of which is provided above.  *See* REGISTERED
LIMITED LIABILITY PARTNERSHIPS, N.Y. P'SHIP LAW ch. 39, art. 8-B, refs & annos. at 1 (2009)
("Article 8-B makes significant fundamental changes in the long-established general rule
governing personal liability of a partner for debts or obligations of his professional service
partnership."); *see also* N.Y. P'SHIP LAW § 26(b).

But the Defendants' argument that limited partners, and in turn limited liability partners,
should not be included in the term "partner" under NYDCL section 277 because (1) limited
partners were not included in the term at the time the provision was enacted and (2) exclusion
would be consistent with their limited liability for partnership debts, is a *non sequitur*.  (Defs'
Reply at 12–17.)  The transfers at issue under NYDCL section 277 are not the "partnership
debts" contemplated in NYPL section 26(b).  The fact that limited partners of limited
partnerships and partners of LLPs are not "jointly and severally" liable for partnership debts has
nothing to do with those partners' personal liability for transfers the partnership made directly to
them.  If transfers by an insolvent partnership directly to its partners were contemplated in the

original NYPL section 26,[10] and similarly if being jointly and severally liable for partnership

debts is, as the Defendants suggest, supposed to mean that the individual partner is also

personally liable for transfers directly to that partner, then there would not have been a "gap" to

fill when the Legislature enacted NYDCL section 277.  *See* Bill Jacket Memo at 203–04 (citing

Crane, 28 HARV. L. REV. at 774–75).

The drafting history of the UFCA's successor, the Uniform Fraudulent Transfer Act

("UFTA"), and how the New York Legislature responded, is also instructive in considering

whether the term "partner" in section 277 of the NYDCL includes partners in a LLP.  *First*, the

UFTA was proposed for adoption in August 1984 by the National Conference of Commissioners

on Uniform State Laws, UNIF. FRAUDULENT TRANSFER ACT (1984), but New York did *not* adopt

it; instead it chose to remain a UFCA jurisdiction.  The UFTA drafters specifically eliminated

UFCA section 8 (NYDCL section 277's equivalent) from the UFTA.  *Id*. prefatory note at 4.

The prefatory note to the UFTA explains that

> [u]nder § 8 of the Uniform Fraudulent Conveyance Act any
> transfer made or obligation incurred by an insolvent partnership to
> a partner is fraudulent without regard to intent or adequacy of
> consideration.   So categorical a condemnation of a partnership
> transaction with a partner unfairly prejudice the interests of a
> partner's separate creditors.

*Id*.[11]  This note describes a policy rationale supporting a change in the statute, but since New

York never amended the NYDCL to adopt the new UFTA, New York partnerships are left

---

[10]    When NYDCL section 277 was enacted, NYPL section 26 only included what is now labeled section 26(a), and did not include any reference or exception for LLP partners.  *See* 1994 Sess. Law News of N.Y. Ch. 576 (S. 7511-A, A. 11317-A) (". . . [a]ll partners are liable:  1. Jointly and severally for everything chargeable to the partnership under sections twenty-four and twenty-five.  2. Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.")

[11]    The UFTA drafters also noted that section 8 of the UFCA made possible the "[a]voidance of the partnership transfer without reference to the partner's state of mind and the nature of the consideration exchanged [which was] unduly harsh treatment of the creditors of the partner and unduly favorable to the creditors of the partnership."  *Id*. § 5 cmt. 3.

subject to the standard making any transfer to a "partner" fraudulent "without regard to intent or adequacy of consideration," with only one exception.  *Id.*; *see also* N.Y. DEBT. & CRED. LAW § 277(a); N.Y. P'SHIP LAW §§ 121-607(a)–(b).  In 1991, the New York Legislature enacted a specific provision in Article 8-A of the NYPL, or the Revised Limited Partnership Act, restricting a *limited partner*'s personal liability for transfers made to a limited partner when the limited partnership was or was thereby rendered insolvent and the limited partner *knew* at the time that the partnership was insolvent.  N.Y. P'SHIP LAW §§ 121-607(a)–(b).[12]  This provision did not repeal NYDCL section 277; rather, it is the more specific provision that prevails over and is to be read with the general section 277.  *Prospect v. Cohalan (In re Wayne)*, 109 A.D.2d 210, 216 (N.Y. App. Div., 2d Dep't 1985) ("The law is settled that in interpreting statutory authority, specific provisions of the statute must prevail over the general provisions.") (citing *People v. Mobil Oil Corp.*, 48 N.Y.2d 192, 200 (1979)).  While the Legislature chose to limit the liability of limited partners for transfers from insolvent limited partnerships when it enacted Article 8-A of the NYPL, it did not adopt any comparable limitation on the liability of LLP partners when it adopted Article 8-B, the Registered Limited Liability Partnership Act, and other LLP-related amendments, only three years later in 1994.  *See* 1994 Sess. Law News of N.Y. Ch. 576 (S. 7511-A, A. 11317-A).

---

[12]         Section 121-609(b) provides as follows:

> (b) A limited partner who receives a distribution in violation of subdivision (a) of this section, *and who knew at the time of the distribution that the distribution violated subdivision (a) of this section, shall be liable to the limited partnership for the amount of the distribution*.  A limited partner who receives a distribution in violation of subdivision (a) of this section, and *who did not know at the time of the distribution that the distribution violated subdivision (a) of his section, shall not be liable for the amount of the distribution*.  Subject to subdivision (c) of this section, this subdivision shall not affect any obligation or liability of a limited partner under a partnership agreement or other applicable law for the amount of a distribution.

*Id.* § 121-607(b) (emphasis added).

*Second*, Maryland, another jurisdiction that like New York still applies the UFCA,

specifically amended its version of UFCA section 8 when it enacted LLP-related provisions into

its law.  1997 Sess. Law Md. Laws Ch. 659 (H.B. 309).  The amendment retracted the broad

reach of subdivision (a) and now allows "partner[s]" to prove "fair consideration" by way of

"services provided or to be provided by the partner to the partnership and the services are

provided or will be provided within 120 days before or after the date the conveyance is made or

the obligation is incurred."  *Id.*; *see also* MD. CODE ANN., COM. LAW § 15-208 (West 2014).  The

timing and substance of this amendment to Maryland law suggest that LLP partners fall under

the term "partner" in Maryland as well as other UFCA jurisdictions[13]—i.e. New York.  *See*

*United States v. Orozco-Prada*, 636 F. Supp. 1537, 1542 (S.D.N.Y. 1986) (looking to NYDCL

section 278's then Pennsylvania Uniform Fraudulent Conveyance Act equivalent to aid in

interpreting and applying the New York version of the uniform statute).

*Third*, when New York enacted Article 8-B of the NYPL, the Legislature simultaneously

amended provisions of the NYPL outside of Article 8-B (1) to except LLPs or their partners from

the application of certain provisions, *see, e.g.*, N.Y. P'SHIP LAW § 40, or (2) to add subsections

---

[13]    The legislative history discussing the amendment to this provision of Maryland state law also suggests that
the original provision applied to LLPs, but the Maryland Legislature sought to clarify that the provision also applied
to limited liability companies ("LLCs").  *See* REPORT OF SPECIAL COMMITTEE ON LIMITED LIABILITY COMPANIES
WITH RESPECT TO THE PROPOSED AMENDMENTS TO THE MARYLAND LIMITED LIABILITY COMPANY ACT at 6 (Jan. 27,
1997).  The legislative history states in pertinent part:

> If a corporation experiences financial difficulty, the principals of the corporation
> can continue to work on its behalf and receive compensation in the form of a
> reasonable salary without any fear that creditors will assert liability against them
> personally if their efforts fail and the corporation is forced into bankruptcy.
> Partners in a limited liability partnership can achieve the same result.  The
> outcome with respect to payment to members of limited liability companies is
> uncertain. . . .  Section 15-208 would be amended to make it clear that
> distributions made to either partners [of partnerships] or members [of LLCs] are
> not fraudulent conveyances if they represent fair and reasonable compensation
> for services rendered to the partnership or limited liability company.

*Id.*

23

expressly pertaining to LLPs or their partners, *see, e.g.*, *id*. §§ 26(b)–(d).  *See also* 1994 Sess. Law News of N.Y. Ch. 576 (S-7511A, A. 11317-A).  Many of the carve-outs for LLP partners in the NYPL were made in sections that refer to "partners" generally, suggesting that LLP partners should be included in the term "partner" under New York law.  For example, NYPL § 40(1) was amended as follows (amended text in italics):

> 1. Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and *except as provided in subdivision (b) of section twenty-six of this chapter, each partner* must contribute toward the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.

N.Y. P'SHIP LAW § 40(1) (emphasis added).

These amendments to the NYPL, however, did "[n]othing . . . [to] affect[] the liability of the partnership or, other than with respect to the changes in the personal liability of the partners, the rights and duties of its partners under the Partnership Law."  REGISTERED LIMITED LIABILITY PARTNERSHIPS, N.Y. P'SHIP LAW ch. 39, art. 8-B, refs & annos. at 1 (2009).  Those "rights and duties" left intact are those of *general* partnerships.  The NYPL expressly states that "[a] partnership without limited partners that has been registered as a registered limited liability partnership is for all purposes the same entity that existed before the registration and continues to be a partnership without limited partners under the laws of this state."  N.Y. P'SHIP LAW § 121-1500(d) (emphasis added).  The entity "before the registration" is a general partnership.  The NYPL expressly requires an entity to be a professional services general partnership to be eligible to register as a LLP.  *See id*. § 121-1500(a); *see also* REGISTERED LIMITED LIABILITY PARTNERSHIPS, N.Y. P'SHIP LAW ch. 39, art. 8-B, refs & annos. at 1–2 (2009) ("The Registered Limited Liability Partnership Act, Article 8-B of the NYPL, was added to the Partnership Law to

24

permit a general partnership engaged in professional service activities in New York to become a

Registered Limited Liability Partnership. . . .  The amended New York law differs from the

provisions in most other jurisdictions which since 1991 enacted legislation authorizing limited

liability partnerships, in that under New York law (1) only a professional service general

partnership may elect such status . . . .").  Provisions of Article 8-A's Revised Limited

Partnership Act similarly suggest that LLPs should be considered general partnerships aside from

the personal liability of LLP partners for partnership debts.  *See, e.g.*, N.Y. P'SHIP LAW § 121-

101(j-1) ("'Other business entity' means any person other than a natural person, *general

partnership (including any registered limited liability partnership* or registered foreign limited

liability partnership) or domestic limited partnership.") (emphasis added); *id.* § 98(1) ("A general

partner shall have all the rights and powers and be subject to all the restrictions and liabilities of

a partner in a partnership without limited partners . . . .").

    The Court therefore concludes that the New York Legislature has provided that partners

of LLPs should not be treated any differently than partners in general partnerships for purposes

of NYDCL section 277(a).  The Defendants' Motion is **DENIED** and the Trustee's Motion is

**GRANTED** insofar as it seeks partial summary judgment declaring that the Defendants, who

were partners of a New York LLP, are "partner[s]" subject to NYDCL section 277(a).[14]

### D.    Defendants' Bankruptcy Code "Reasonably Equivalent Value" Defense

    The Trustee asserts claims to avoid constructively fraudulent conveyances to the

Defendants under section 548(a)(1)(B) of the Bankruptcy Code and sections 273 through 275 of

---

[14]    The parties did not raise the issue whether a defendant who was a former or retired partner (or not a presently active partner in the partnership) at the time the challenged transfers were made should also be considered a "partner" subject to NYDCL section 277(a).  The Court therefore does not reach that issue here, but if they are not "partner[s]," they would then be "person[s] not [] partner[s]" entitled to a "fair consideration" defense under section 277(b).  As described below, however, the former partners would likely not be able to prove fair consideration in exchange for any distributions made on account of their former partnership interest, which are the only relevant distributions at issue in these cross-motions.

the NYDCL, in Counts I and III of the complaints, respectively,[15] in addition to NYDCL section

277. (*See, e.g.*, Compl. ¶¶ 55–64, 74–84). The Defendants assert a "value" defense against each

of these claims.

The Bankruptcy Code protects a transfer from avoidance if the debtor received

"reasonably equivalent value" in exchange. 11 U.S.C. § 548(a)(1)(B)(i). The question of

"reasonably equivalent value" is ordinarily based on the "facts and circumstances of each case"

and requires the court to "compare what was given with what was received." *Estate of Ruffini v.

Norton Law Grp. PLLC (In re Ruffini)*, Adv. Proc. No. 12-8396, 2014 WL 714732, at *7 (Bankr.

E.D.N.Y. Feb. 25, 2014); *see also Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.)*, 507

B.R. 452, 470 (Bankr. S.D.N.Y. 2014) ("Whether the debtor received 'reasonably equivalent

value' for the alleged fraudulent transfer is ordinarily a question of fact."); *Jackson v. Mishkin

(In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 466 (S.D.N.Y. 2001) ("[G]enerally[,]

whether a transfer is for 'reasonably equivalent value' is largely a question of fact . . . ."). 

Courts consider "the good faith of the parties, whether it was an arm's length transaction, and

what the debtor actually received." *Ruffini*, 2014 WL 714732, at *7.

The NYDCL similarly protects transfers from avoidance if the debtor received "fair

consideration" in exchange for the challenged transfers. N.Y. DEBT. & CRED. LAW §§ 273–275.

> Fair consideration is given for property, or obligation,
>
> > a. When in exchange for such property, or obligation, as a
> > fair equivalent therefor, and in good faith, property is
> > conveyed or an antecedent debt is satisfied, or
> >
> > b. When such property, or obligation is received in good
> > faith to secure a present advance or antecedent debt in

---

[15]    The Trustee does not assert section 548(a)(1)(B) claims against Defendants Greene and Zdrojeski, but does assert the NYDCL sections 273 through 275 claim in Count I of the complaints against them. (*See* Greene Complaint, ¶¶ 44–54, Adv. Proc. No. 14-01797, ECF Doc. #1; Zdrojeski Complaint, ¶¶ 44–54, Adv. Proc. No. 14-01794, ECF Doc. # 1.)

> amount not disproportionately small as compared with the
> value of the property, or obligation obtained.

*Id.* § 272.

Courts use the term "fair consideration" interchangeably with "reasonably equivalent

value" when examining constructive fraud claims under the NYDCL and the Bankruptcy Code.

*Ruffini*, 2014 WL 714732, at *7. While the NYDCL and Bankruptcy Code fraudulent transfer

sections are generally treated similarly, there are also differences.

> Under New York law, the party seeking to have the transfer set
> aside has the burden of proof on the element of fair consideration
> and, since it is essential to a finding of fair consideration, good
> faith. *United States v. McCombs,* 30 F.3d 310, 326 & n.1 (2d Cir.
> 1994). The Bankruptcy Code also provides that good faith is
> relevant in a constructive fraud case, but unlike New York law,
> § 548(c) of the Bankruptcy Code "designates the transferee's good
> faith as an affirmative defense which may be raised and proved by
> the transferee at trial," and the plaintiff need not plead lack of good
> faith as an element of the claim itself. *Gredd v. Bear, Stearns
> Secs. Corp. (In re Manhattan Inv. Fund, Ltd.),* 310 B.R. 500, 508
> (Bankr.S.D.N.Y.2002) [("*In re Manhattan Inv. Fund I*")].

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*, 337 B.R. 791, 802 (Bankr.

S.D.N.Y. 2005); *see also Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund,

LLC (In re Bayou Grp., LLC)*, 439 B.R. 284, 300–04 (S.D.N.Y. 2010).

In light of the Court's dismissal of the section 548(b) claims and upholding of the

NYDCL section 277(a) claims, whether the Defendants can assert a "value" defense is relevant

to the Bankruptcy Code section 548(a)(1)(B) claims asserted against the Defendants.[16]

> 1. *Defendants Are Not Entitled to a "Value" Defense for Services the
> Defendants Rendered as Partners of Dewey under the DLPA*

The Defendants move for partial summary judgment arguing that as a matter of law they

are entitled to a credit against any personal liability under the constructive fraudulent transfer

---

[16]    As indicated above, the Trustee did not assert section 548(a)(1)(B) claims against Defendants Greene and
Zdrojeski.

claims for the fair value of their previously rendered services as Dewey partners measured by their billable hours worked, business generated, fees collected, marketing, and client and practice development. (Defs' Motion at 20–22.) According to the Defendants, these services are "property" that they conveyed to Dewey and constitute "value" generated for creditors. (Defs' Reply at 4–8.) The Trustee cross-moves for summary judgment arguing that New York's "no compensation rule," which holds that partners are not entitled to compensation beyond their share of the partnership's profits, precludes the Defendants' "value" defense. (Trustee's Motion at 5–9.) The parties have not cited any case law directly addressing these issues, but rather argue their positions by extrapolating from more general legal principles.[17]

Unlike most cases in which the "value" defenses are fact specific and clearly not appropriate for summary judgment, the issue posited here is narrower—should the services performed by the Defendants, as Dewey partners, be considered in determining whether the Defendants exchanged "reasonably equivalent value" for the compensation they received. If the services must be considered, then the Defendants' would be entitled to this initial partial summary judgment, but the later and final outcome would depend on the resolution of disputed issues of fact. If the services cannot be considered, then the Trustee would be entitled to partial summary judgment in his favor.

Under the Code, services rendered by a company's employees have been found to provide "value" that may be considered in a "reasonably equivalent value" defense. *See, e.g.*, *Pryor v. Tiffen, (In re TC Liquidations LLC)*, 463 B.R. 257, 268 (Bankr. E.D.N.Y. 2011). The

---

[17]     The Defendants do rely in part on Judge Gropper's prior holding in *Fontana* that former partners in a law firm LLP were entitled to provide proof of "value" in the form of the services they rendered on behalf of the firm. (Defs' Motion at 12.) In *Fontana*, however, the partnership agreement specifically provided for "advances" to be made to partners—"advances" which the parties here agree were not similarly available under the general terms of the DLPA—and the trustee specifically argued (or conceded) that the partnership agreement provided the partners with a right to their "net payments" "even though the payments were equity interests in the Partnership"—a position the Trustee has not taken in this case. *Fontana*, 2014 WL 2178156, at *4.

court in *Pryor* analyzed NYDCL's "fair consideration" defense and the Code's "reasonably

equivalent value" defenses together:

> [c]ase law has established that payments of salary are presumed to
> be made for fair consideration, and in order for a trustee to avoid
> them he must establish that the salary payments were excessive in
> light of the Defendants' employment responsibilities.

*Id.* (citing *Anderson & Assocs., PA v. S. Textile Knitters De Hond. Sewing Inc. (In re S. Textile

Knitters)*, 65 Fed. App'x 426, 437 (4th Cir. 2003); *Cilco Cement Corp. v. White*, 55 A.D.2d 668,

668 (N.Y. App. Div., 2d Dep't 1976)).[18]  Services rendered by third parties for a debtor have also

been found to provide "reasonably equivalent value."  *See, e.g.*, *Balaber-Strauss v. Sixty-Five

Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 679–80 (Bankr. S.D.N.Y. 2000)

(dismissing section 548 claims because third party investment brokers were entitled to payments

made for the services they provided the debtor where there was no evidence of wrongdoing on

the part of the brokers).

The Trust argues, however, that the Defendants were partners in a partnership and the

payments made to them pursuant to the DLPA were distributions on account of their interests in

that partnership—not typical compensation payments made to employees or third parties.  (*See

Trustee's Motion at 5–9.*)  According to the Trustee, LLP partners are not entitled to

compensation payments for their services under New York law, and therefore, the payments at

issue on these cross-motions should not be treated as such.  (*Id.*)

---

[18]      Case law has recognized that continued employee services may be considered "new value" that the
employees "contemporaneous[ly]" conveyed in exchange for the compensation payments they received, providing a
defense to preference actions brought under section 547.  *See, e.g.*, *Jacobs v. D'Alessandro (In re Dewey & LeBoeuf
LLP)*, No. 12-12321 (MG), 2014 WL 4746209, at *9 (Bankr. S.D.N.Y. Sept. 23, 2014) (discussing *Official Comm.
of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Services, Inc. (In re 360networks (USA) Inc.)*,
338 B.R. 194, 204–05 (Bankr. S.D.N.Y. 2005) (citing *Jones Truck Lines, Inc. v. Cent. States, Se. and Sw. Areas
Pension Fund (In re Jones Truck Lines)*, 130 F.3d 323, 327 (8th Cir. 1998)); *Official Comm. of Unsecured Creditors
of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 50 (Bankr. S.D.N.Y. 2006)).

"State law governs the determination of property rights in a bankruptcy proceeding." *In re Idicula*, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013) (citing *Butner v. United States*, 440 U.S. 48, 54 (1979) (noting that absent an actual conflict with federal bankruptcy law, Congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law"); *In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989)).  Under New York law, the Legislature has set forth clear provisions governing the property rights of LLP partners such as the Defendants.  According to the NYPL, "[t]he property rights of a partner are (a) his rights in specific partnership property, (b) his interest in the partnership, and (c) his right to participate in the management."  N.Y. P'SHIP LAW § 50.  The NYPL explains that "[a] partner's interest in the partnership is his share of the profits and surplus and the same is personal property."  *Id*. § 51.  In terms of the "rights and duties of partners," the NYPL further provides that "[n]o partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."  *Id*. § 40(6).

This last provision, also known as the "no compensation rule," derives from the "general principle of partnership law that partners are expected to devote their efforts to the partnership business, not to individual endeavors"; the "presumption [is] . . . that the firm's business belongs to the firm, and not to any individual partner."  *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 480 B.R. 145, 159 (S.D.N.Y. 2012), *perm. app. granted*, 2012 WL 10234967 (2d Cir. Dec. 18, 2012), *appeal to* 2013 WL 9363394 (2d Cir. Dec. 2, 2013), *certifying questions to* 24 N.Y.3d 16 (2014), *rev'd in part and vacated in part on other grounds* 574 F. App'x 15 (2d Cir. 2014); *see also Geron v. Robinson & Cole LLP*, 476 B.R. 732, 739 (S.D.N.Y. 2012), *appeal to* 736 F.3d 213 (2d Cir. 2013), *certifying questions to* 24 N.Y.3d 16 (2014), *aff'd,*

762 F.3d 157 (2d Cir. 2014) (noting that "the 'no compensation rule' applies in New York" in

determining "whether New York law sanctions the expansion of the rule to a dissolved [LLP]

law firm's pending hourly fee matters").  The "no compensation rule," however, is a default rule,

and the parties may agree otherwise, for example, by entitling partners to "special

compensation."  *Friedman v. Golden Arrow Films, Inc.*, 442 F.2d 1099, 1106 (2d Cir. 1971) ("A

concomitant rule provides that a partner is entitled to special compensation if the parties did, in

fact, agree that such compensation should be allowed."); *Dev. Specialists*, 480 B.R. at 159

("[T]he statute only sets default rules.  With few exceptions . . . , partners are free to vary these

rules by partnership agreement."); *see also Ederer*, 9 N.Y.3d at 526 ("The Partnership Law's

provisions are, for the most part, default requirements that come into play in the absence of an

agreement.").

    The parties agree that the DLPA allows for "special compensation" agreements to be

made with individual partners, but that such agreements are outside the scope of these cross-

motions due to the individual facts necessary to ascertain the terms of those "special

compensation" agreements.  (Trustee's Motion at 6; Defs' Reply at 1–2); *see also* DLPA §§ 6.2

(Executive Committee may award "Special Payments" to individual partners); 6.5(a) (Executive

Committee may provide for payments to individual partners "as a full or partial fixed annual

amount with no or partial or full participation in losses"); 4.10 & 1.5(a) (Executive Committee

may designate individual attorneys as "Salaried Partners" who are authorized to use the title of

"partner" in marketing, but who receive fixed salaries and are not "Partners" under the DLPA).

These cross-motions are thus limited to the non-"special" agreements, or, the collectively

applicable terms set forth in the DLPA.  Those non-"special" terms incorporate the "no

compensation" rule.  *See, e.g.*, DLPA §§ 3.1 ("Each partner shall devote full time to the conduct

of Firm affairs . . . ."); 5.3 ("*Partnership Income.*  All fees, salaries, proceeds, commissions and

other compensation earned or received by any Partner (a) for legal services . . . shall belong to

the Partnership and shall be deposited for and paid over to the Partnership as and when received

in exactly in the form received (except for endorsement where required).") (emphasis in

original); 6.1 ("It is the intent of this Agreement that all net profits and net losses of the Firm for

any calendar year be shared among the Partners in accordance with their respective interests in

the Firm . . . ."); *see also id.* § 6.3 ("*Sharing of Profits.* . . . net profits of the Firm for any

calendar year in excess of the sum of (i) the aggregate amount of Participation Targets for all

Partners for such year and (ii) the aggregate amount of any Special Payments payable to any

partners in such year shall be distributed to the Full-Year Partners for such year in amounts

proportional to their respective Percentage Shares for such year.") (emphasis in original).[19]

Under the general terms of the DLPA then, "the services of a partner are rendered for the

common benefit in the performance of an obligation created by the partnership agreement, and

the resultant benefit is divided [] as provided in the partnership contract . . . [;] there is no right to

other compensation based on the reasonable value of the services actually rendered."  *Levy v.

Leavitt*, 257 N.Y. 461, 467 (1931).

    The Defendants make a policy argument that the New York "no compensation rule" does

not capture the reality of modern law practice (or Dewey's "eat what you kill" construct (Oct. 2,

2014 Transcript 111:5–18)).[20]  But the "no compensation rule" is part of New York's statutory

---

[19]    The DLPA also contemplates the designation of "Salaried Partners" who may hold themselves out to be
partners of Dewey, but are "for all purposes [] employees of the Partnership" entitled to a salary, not an actual
interest in the partnership like actual "Partners" in Dewey.  DLPA § 4.10.  That Dewey distinguishes in its own
partnership agreement between salaried employee-partners and actual partners who are paid through a share in the
firm's profits, further demonstrates that the Defendants, who were actual partners in Dewey, are not entitled to
compensation for their services.

[20]    At least one court has recognized that the "no compensation rule" may not accurately reflect the reality of
practice in a partnership invoking the "mega-firm" model that many modern law firms, such as Dewey, follow.

law.  N.Y. P'SHIP LAW § 40(6).  It was also adopted in the Defendants' partnership agreement.

*See, e.g.*, DLPA §§ 3.1, 5.3, 6.1, 6.3.  It is not the proper role of a court to bend the rules of

statutory construction because the Defendants do not believe the rules, or their contract terms,

capture the "reality of modern law practice."  Dewey's partners must accept the benefits and

burdens attached to the firm's status as a New York LLP and terms of the DLPA.

The Court **DENIES** the Defendants' Motion, but **GRANTS** the Trustee's Motion such

that the Defendants are not entitled to a "reasonably equivalent value" defense under the

Bankruptcy Code in the form of the services they rendered as partners of Dewey for the allegedly

fraudulent transfers Dewey made to them under the DLPA.

2.      *Defendants Are Not Entitled to a Value Defense for the Return of Former
        Partners' Capital Contributions*

The Defendants also move for partial summary judgment declaring that they have a

"value" defense to the extent the challenged transfers were made to former partners of Dewey

after their respective departure dates in satisfaction of the return of the partners' capital

contributions because these transfers were made on account of antecedent debts as prescribed in

the DLPA and are therefore not avoidable.  (Defs' Motion at 22–25.)  The Trustee argues that the

returns of the capital contributions were equity distributions received on account of the

Defendants' interests in the partnership, not on account of preexisting contractual obligations.

(Trustee's Motion at 15–17.)

Payment of an antecedent debt may satisfy the requirements of a "reasonably equivalent

value" defense because "[p]ast consideration is good consideration" and "the payment of an

---

*Dev. Specialists,* 480 B.R. at 158–59 ("In the context of the 'mega-firm' model – divisions among classes of
partners, client hoarding, and mercenary lateral hiring – one could argue that the law's presumption that partners are
mutual owners of all of a law firm's business, and that all contribute to its success and so are entitled to share in the
profits, no longer reflects the reality of practice.  Many partners at such firms no longer view their 'book of
business' as an asset of the firm, but as a jealously guarded piece of personal property.  Such a view undermines the
conclusion that such client matters really are property of the firm, as well as the premises of the no compensation
rule.  But the Partnership Law says otherwise.") (citations omitted).

existing liability is not fraudulent." *Pereira v. Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*,

301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003). Equity distributions are not ordinarily considered

transfers made on account of an antecedent debt, and in turn, are not considered to be made in

exchange for "reasonably equivalent value." *See Fontana*, 2014 WL 2178156, at *6.

The DLPA reads in pertinent part:

> [A] Partner whose membership in the Partnership ceases as a result
> of his Departure . . . shall be entitled to receive the following,
> without interest:
>
> (i) The credit balance, if any, in his Capital Account at the
> Departure Date . . .[, which] shall be made in three (3) equal
> annual installments (each in the amount of 1/3 of the total) by
> December 31 of each year commencing with the first year that
> ends at least six months after the Departure Date; *provided,
> however*, that the Office of the Chairman at his discretion, shall
> have the right to alter the foregoing payment schedule to accelerate
> any payments due thereunder; and
>
> (ii) The credit balance, if any, in his Income Account at the
> Departure Date . . . .

DLPA § 7.6(a) (emphasis in original). The Defendants argue that section 7.6 of the DLPA sets

forth a "right to payment" upon a partner's "Departure Date" and any transfers made to satisfy

this "right" were to satisfy debts, not their equity interests. (Defs' Motion at 22–25.)

This provision of the DLPA is not as dispositive as the Defendants suggest. A

"defendant is not entitled to retain a fraudulent conveyance merely because they were provided

pursuant to a contract." *Fontana*, 2014 WL 2178156, at *6 (citing *TSIC, Inc. v. Thalheimer (In

re TSCI, Inc.)*, 428 B.R. 103, 114–15 (Bankr. D. Del. 2010) (concluding that a severance

payment to a CEO pursuant to terms of an employment contract was a fraudulent conveyance

where the debtor only benefitted to the extent of the services provided by CEO, who already

received an $850,000 base salary in exchange for those services)). Section 7.6 of the DLPA is

not a "special compensation" arrangement and does not override the default application of the

34

"no compensation rule." *Dev. Specialists*, 480 B.R. at 159. That the DLPA and NYPL subordinate these types of returns to all other partnership liabilities, consistent with the Bankruptcy Code's subordination of equity interests to the claims of secured and general unsecured creditors, supports the treatment of these transfers as equity distributions, rather than distributions to unsecured creditors. *Compare* N.Y. P'SHIP LAW § 40(2) *and* DLPA § 7.7(c), *with* 11 U.S.C. § 507.

Even though the partners' equity interests cease upon their "Departure Date[s]," the return of the capital contribution still arises out of the original capital contribution which was made in connection with obtaining an equity interest in the partnership. (*Accord*, Trustee's Opp. Ex. A, Order of Dec. 23, 2013, *Diamond v. Gabler (In re Howrey LLP)*, Adv. Proc. No. 13-03211 (Bankr. N.D. Cal. Dec. 23, 2013) (rejecting defendant's argument that payments returning capital contributions to a former partner of a law firm after his departure and during the LLP-debtor's insolvency were payments to him as a creditor, not equity distributions) ("There's a principle in the world of insolvency called once a shareholder always a shareholder. And if we translate that to the law firm, I don't see how you take something called a capital contribution, recognizing as I do from the record, that at the time you were repaid you were no longer a partner, it was still a return of a capital contribution.").) The Court does not find that the mention in the DLPA of the return of the partner's interest in the partnership transforms these equity distributions into consideration satisfying antecedent debts.

The Court **DENIES** the Defendants' Motion and **GRANTS** the Trustee's Motion such that the Defendants are not entitled to a "value" defense to the Bankruptcy Code fraudulent conveyance claims based on the return of former partners' capital contributions.

35

### E.   NYDCL Section 278

The Defendants also argue that if they are subject to NYDCL section 277(a), which the

Court holds that they are, they are not subject to strict liability in any event because they are

entitled to a "fair consideration" defense pursuant to NYDCL section 278 as a matter of law.

NYDCL section 278 provides:

> 1. Where a conveyance or obligation is fraudulent as to a creditor,
> such creditor, when his claim has matured, may, as against any
> person *except a purchaser for fair consideration without
> knowledge of the fraud at the time of the purchase*, or one who has
> derived title immediately or mediately from such a purchaser,
>
> > a. Have the conveyance set aside or obligation annulled to
> > the extent necessary to satisfy his claim, or
> >
> > b. Disregard the conveyance and attach or levy execution
> > upon the property conveyed.
>
> 2. A purchaser who without actual fraudulent intent has given less
> than a fair consideration for the conveyance or obligation, may
> retain the property or obligation as security for repayment.

N.Y. DEBT. & CRED. LAW § 278 (emphasis added).

*First*, section 277(a) in connection with New York's "no compensation rule" imposes a

strict liability standard for purposes of clawing back distributions to partners on account of their

partnership interests; it does not permit defenses based on intent or "fair consideration."[21]  *See*

N.Y. DEBT. & CRED. LAW § 277(a); N.Y. P'SHIP LAW § 40(6).  *Second*, a partner receiving

---

[21]     A determination whether a defendant is a "purchaser for fair consideration" under NYDCL section 278
would require the Court to conduct a fact-specific analysis that turns primarily on whether the defendant had
knowledge of the fraud at issue (i.e. that the debtor was insolvent at the time the transfer was made).  *See Farm
Stores, Inc. v. Sch. Feeding Corp.*, 102 A.D.2d 249, 255–56 (N.Y. App. Div., 2d Dep't 1984); *Fed. Deposit Ins. Co.
v. Malin*, 802 F.2d 12, 18–19 (2d Cir. 1986).  But intent, such as knowledge, and the adequacy of consideration is
precluded from, or in the least is inconsistent with, the analysis of transfers made by a partnership to a partner under
NYDCL section 277.  *See, e.g.*, UNIF. FRAUDULENT TRANSFER ACT, prefatory note at 4 ("Under § 8 of the Uniform
Fraudulent Conveyance Act *any* transfer made or obligation incurred by an insolvent partnership to a partner is
fraudulent *without regard to intent or adequacy of consideration*[; a] categorical [] condemnation of a partnership
transaction with a partner.") (emphasis added); *id.* § 5 cmt. 3 (UFCA section 8 allowed for the "[a]voidance of the
partnership transfer *without reference to the partner's state of mind and the nature of the consideration exchanged
. . . .*") (emphasis added).

partnership distributions on account of his or her interest in the partnership is not a "purchaser" under section 278(1).[22] *Third*, even if a section 278 fair consideration defense to a claim under section 277(a) was available against the transfers at issue on these cross-motions, the Defendants did not provide "fair consideration" in exchange. Since the NYDCL's "fair consideration" defense is generally treated the same as the Code's "reasonably equivalent value" defense, *see Ruffini*, 2014 WL 714732, at *7, the Defendants are unable to prove a "fair consideration" defense as a matter of law in the form of their services or on account of the return of former partners' capital contributions for purposes of NYDCL section 278 as well, *see* N.Y. DEBT. & CRED. LAW § 278.

The Court therefore **DENIES** Defendants' Motion to the extent it seeks summary judgment declaring that they are entitled to a "fair consideration" defense pursuant to NYDCL section 278 against the payments made under the DLPA at issue and alleged to be in violation of NYDCL section 277.

### F.    NYDCL's Good Faith Requirement

The Trustee also moves for summary judgment arguing that the Defendants are precluded as a matter of law from asserting a "fair consideration" defense because as former partners of Dewey, they were "insiders," which renders transfers made to them presumed to lack the requisite good faith. (Trustee's Motion at 9–10.) In light of the Court's denial of the Defendants' "fair consideration" defense with respect to the payments at issue on these cross-motions, the Court also **DENIES** as moot the Trustee's Motion with respect to this argument.

---

[22]    The NYDCL does not define "purchaser," but its ordinary meaning is "one who obtains property for money or other valuable consideration." "Purchaser," BLACK'S LAW DICTIONARY 1355 (9th ed. 2009). In some instances, courts refer to a "purchaser" under section 278 as a "bona fide purchaser," *see, e.g.*, *Farm Stores*, 102 A.D.2d at 255–56, which is defined as "[o]ne who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title," or "one who has in good faith paid valuable consideration for property without notice of prior adverse claims." "Purchaser," BLACK'S LAW DICTIONARY 1355.

To the extent the Trustee's Motion seeks summary judgment precluding the "fair consideration" defense as to all other payments challenged under NYDCL sections 273 through 275, the Court also **DENIES** the motion because there are genuine issues of material fact regarding (1) whether each individual Defendant should be considered an "insider," *In re Velo Holdings Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (inquiry of whether a defendant is an "insider" requires an individualized fact-specific analysis that can turn "on a case-by-case basis from the totality of the circumstances . . . .") (citing *CPY Co. v. Ameriscribe Corp. (In re Chas. P. Young Co.)*, 145 B.R. 131, 136 (Bankr. S.D.N.Y. 1992) (citation omitted)), and (2) if the Defendants are deemed to be "insiders," whether the Defendants are able to rebut the presumption of bad faith, *see D'Alessandro*, 2014 WL 4746209, at *12 (holding that a transfer to an "insider" is not per se made in bad faith, but rather presents a rebuttable presumption) (comparing *Allen Morris Commercial Real Estate Servs. Co. v. Numismatic Collectors Guild*, No. 90 CIV. 264, 1993 WL 183771, at *9 (S.D.N.Y. May 27, 1993) (holding that transfer from insolvent debtor to insiders were "per se violative of the good faith requirement"), with *Bank of Commc'ns v. Ocean Dev. Am., Inc.*, 904 F. Supp. 2d 356, 361 (S.D.N.Y. 2012) (limiting the presumption against good faith for transfers made by insolvent debtor to "insiders" to transfers discharging antecedent debts for services previously rendered that do not offer any present value for the debtor)).

## III.    <u>CONCLUSION</u>

For the reasons stated above, the cross-motions for partial summary judgment are **GRANTED** in part and **DENIED** in part.  This opinion and order therefore constitutes an interlocutory order; proposed findings of fact and conclusions of law need not be entered at this

stage of the case and appellate review is only available under 28 U.S.C. § 158(a)(3) and

Bankruptcy Rule 8003.[23]

**IT IS SO ORDERED.**

Dated:  October 29, 2014
        New York, New York


_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge

---

[23]    *See O'Toole v. McTaggart (In re Trinsum Grp., Inc.)*, 467 B.R. 734, 740–41 (Bankr. S.D.N.Y. 2012).